UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| WEI QIU, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 22-196-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BOARD OF EDUCATION OF WOODFORD COUNTY PUBLIC SCHOOLS, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A final Judgment was entered in favor of Defendant Board of Education of Woodford County Public Schools (the "Board") on September 27, 2023. [Record No. 33] Plaintiff Wei Qiu then moved for sanctions against Grant Chenoweth, the Board's counsel, on October 10, 2023. [Record No. 34] Next, Qiu filed a motion on October 17, 2023, to alter the Memorandum Opinion and Order granting the Board summary judgment. [Record No. 35]

Qiu's motion for sanctions will be denied because she fails to state with any particularity grounds for the motion or offer a legal argument to support the imposition of sanctions. Qiu's motion to alter the Memorandum Opinion and Order granting the Board summary judgment will be denied for the same reason. In addition, Qiu will be directed to tender a written explanation regarding why the Court should not impose prefiling restrictions.

**I.**

Qiu moves for sanctions against Attorney Chenoweth on two grounds. First, she contends that he spoliated evidence to aid in misrepresenting the qualifications of another

applicant for the physics position in issue. Second, Qiu claims that Chenoweth misrepresented the law to disqualify Qiu for the physics position. Even if these arguments had merit, which they do not, neither assertion has any relevance to the outcome of this case. However, to provide a fully-developed record, the Court will address both assertions.

### A.

Qiu alleges that Chenoweth falsely indicated that the Board's chosen applicant was a qualified candidate because he was "enrolled in an 'Option 6' program." [Record No. 34-2, p. 1] She then suggests that Chenoweth spoliated evidence by redacting the academic enrollment dates of the applicant to obscure the fact that he was not qualified at the time he was selected.

Chenoweth responds by noting that redactions were intended solely to protect the identity of the individual applicant, consistent with guidance from the Kentucky Attorney General's Office. *See* 00-ORD-090. He further states that, consistent with Option 6, the applicant "only needed to have registered for [a teacher preparation] program at the time he applied," and the applicant had done so. [Record No. 36, p. 3]

A person can be "enrolled," *i.e.*, officially registered, in a program despite not yet attending classes. *See Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 720 (Ky. 2012) ("Indeed, 'enroll' and 'attend' are not synonymous."). Under Option 6, a student receives a one-year provisional certificate "*concurrently* with employment as a teacher in a local school district." KRS 161.048(7) (2017) (emphasis added). Accordingly, an applicant would not have to begin attending Option 6 classes until he or she was hired and teaching. The applicant's resume, which Qiu herself submitted in the record, indicates that the applicant was "enrolled

in the Option 6 MAT program at the University of the Cumberlands" and that he "will dual certify in Physics and Math."[1] [Record No. 25-1, p. 12] Despite Qiu insisting the applicant was falsely described as qualified, the Board's Memorandum filed in Support of Summary Judgment clearly states that the chosen applicant "because of being enrolled in an Option 6 program . . . was also not yet qualified for the position, but was eligible for the issuance of a provisional certificate to teach physics upon being hired for the physics position." [Record No. 26, p. 12] Neither Chenoweth nor the Board misled the Court.

And no spoliation occurred. "Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). This Court has also recognized spoliation where evidence is materially altered. *See First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.*, 12-cv-289, 2014 WL 12648548, at *3 (E.D. Ky. Aug. 21, 2014) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2011)). Qiu does not allege that any documents were destroyed. She merely contends that Chenoweth's redactions constituted "changed evidence." [Record No. 37, p. 4] But redacting the applicant's enrollment dates did not "alter" the document. If Qiu wished to oppose the redactions, she had ample time to do so. And even if the redaction had risen to the level of alteration, it would not have been material. Qiu failed to demonstrate that she was a qualified applicant as part of her *prima facie*

---

[1] The resume uses both present tense (is enrolled) and future tense (will certify) to demonstrate that the applicant was enrolled in the Master of Arts in Teaching ("MAT") program at the University of the Cumberlands and intended to participate in the university's EPSB-approved Option 6 programs for Physics (Course Code 290) and Math (Course Code 210).

case. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Accordingly, the Court was not required to analyze the other applicant's qualifications.

**B.**

Qiu next alleges that Chenoweth misrepresented the law to disqualify her from the physics position by suggesting she was not qualified under Option 7. This argument highlights Qiu's ongoing misunderstanding of the applicable statute. Despite this Court's detailed Memorandum Opinion and Order [Record No. 32], Qiu continues to argue that she was "ready to be professionally certified for the physics position by Option 7 for her physics Praxis score . . . ." [Record No. 34, pp. 3–4] This argument fails as a matter of law for two reasons. First, the Praxis scores Qiu submitted offer no support of her qualification because they were unverified and expired.[2]

> [E]ven if Qiu had submitted a certified copy of her Praxis scores demonstrating proficiency in physics, the scores provided had expired for purposes of teacher certification. Pursuant to 16 KAR 5:020, "A passing score on an assessment established at the time of admission shall be valid for the purpose of applying for admission for five (5) years from the assessment administration date." The test upon which Qiu relies to demonstrate her proficiency in physics was taken May 7, 2013 (a date some seven years before applying for the vacancy here in issue).

[Record No. 32, p. 8] Second, even if her Praxis scores had been both verified and unexpired, Option 7 still would not be available to her because she already holds a certification in chemistry. "The Institute Alternative Route to certification is only available for initial

---

[2] "At the EPSB Meeting on July 11, 2022, the Board voted unanimously to allow ten-year recency for admission assessments under 16 KAR 5:020. However, when Qiu applied for the physics teacher position, the five-year recency requirement was in place. *See* Meeting Minutes, Action Item 2022-034, Education Professional Standards Board, Kentucky Department of Education (July 11, 2022)." [Record No. 32, p. 8, n.5]

certification, which is clearly stated on the EPSB explainer that she herself provided." [Record No. 32, p. 8]

Qiu's motion for sanctions levies unfounded accusations against Chenoweth and attempts to relitigate issues already resolved. Her motion for sanctions will denied because Qiu fails to raise any legal basis to support her request.

## II.

Qiu's second motion seeks to alter the Court's Order granting summary judgment to the Board. [Record No. 32] She argues that the order "falsified facts appallingly," that it "shamed the federal court nastily," and that it "lawyered for Board." [Record No. 35, pp. 9, 10, 12] From a substantive standpoint, Qiu merely attempts to relitigate prior rulings she finds unfavorable—most of which have no bearing on the outcome of this case. The arguments that she makes are addressed, in detail, in the Court's Memorandum Opinion and Order granting summary judgment for the Board. She does not challenge the Court's decisions on legal grounds, and simply ignores the Court's reasoning and characterizes each ruling against her as "material error" or "injustice." This motion also will be denied because Qiu establishes no basis on which the subject Order should be altered.

Rule 59(e) allows a litigant to file a motion to alter or amend a judgment and gives the district court an opportunity to "rectify its own mistakes in the period immediately following its decision." *White v. N.H. Dep't of Emp. Security*, 455 U.S. 445, 450 (1982). The court may grant a Rule 59(e) motion if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l*

*Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Courts will not address new arguments or evidence that the moving party could have raised before the decision on the merits issued. *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020).

### A.

Qiu dedicates a considerable amount of time to arguing that "Board lied to fake the qualification of the selected White/Caucasian for the position" and that the Court "took Board's material lie knowingly." [Record No. 35, pp. 1, 10] But as the Court has repeatedly stated, the applicant's qualifications were irrelevant to the outcome of this case.

For her case to survive the Board's motion for summary judgment, Qiu was required to establish a *prima facie* case of disparate treatment. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Doing so required her to demonstrate that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] job; (3) [s]he suffered an adverse employment decision; and (4) [s]he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Baxter Healthcare Corp.*, 533 F.3d at 391; [Record No. 32]. Despite her insistence to the contrary, Qiu failed to demonstrate that she was qualified for the job. As a result, the Court was not required to analyze the other applicant's qualifications and the Board was entitled to summary judgment. This argument does not support Qiu's motion to alter the Court's judgment.

**B.**

Next, Qiu argues that the Court erred by not considering earlier acts of alleged discrimination. But the order granting summary judgment to the Board explained this in detail. [*See* Record No. 32, Part I] Qiu ignores the Court's analysis and cites a California Court of Appeals decision interpreting state law to suggest that the Court made "many errors of fact and law purposely that it is injustice." [Record No. 35, p. 7] Qiu's bald assertion that the Court erred, absent any legal argument, does not support her motion.

**C.**

Qiu also contests the Court's denial of her motion to file a sur-reply when the parties were briefing their motions for summary judgment. [Record No. 35, p. 12] The Court dedicated Part III of its Memorandum Opinion and Order to addressing her request and laid out the reasons for denying her motion. [Record No. 32] Qiu ignores this reasoning and simply asserts that it was a material error of the Court. Despite her claim, the Board's Reply had not introduced a new issue of law and Qiu was not entitled to file a sur-reply. But even if the Court had permitted the filing, the issue she wished to address had no bearing on the outcome of this case.

**D.**

The final substantive argument is Qiu's contention that the Court erred when determining that her Praxis scores were expired for purposes of teacher certification through Option 7.[3] Rather than challenge the Court's recitation of blackletter law, Qiu makes an

---

[3] This ignores the fact that Qiu does not qualify for certification through Option 7, which is for new certification only. [*See* Record No. 32, p. 8].

argument by analogy. She notes that license renewal as a certified nursing aid requires candidates to provide evidence that they performed nursing related functions for at least eight hours for pay as a nurse aide during the prior twenty-four-month period. She argues that "memory fades with time, and practicing strengths memory that every kind of certificate is valid as long as the holder practices the expertise which was certified." [Record No. 35, p. 15] Accordingly, Qiu states that her "memory of physics was still good in 2021 because she taught physics in 2017-2018 . . . . So Qiu's physics Praxis was still valid in 2021 because she taught physics in 2017-2018 like her nursing aid certificate is valid if she practices 8 hours on a paid job every two year." [Record No. 35, p. 15] Qiu's theory on license permanence does not negate the Commonwealth's statutory requirements for teacher certification. For these reasons, Qiu's motion to alter the Court's judgment will be denied.

### III.

Qiu has a history of inappropriately moving for sanctions, attempting to relitigate resolved matters, and unnecessarily prolonging litigation. All litigants, including those proceeding *pro se*, have a duty to litigate their claims in good faith. The above-described misconduct abuses the judicial process and unfairly burdens one's adversaries by needlessly extending their expenditure of time and money. To prevent further disruption to the Court and the unnecessary burden on her opponents, the Court may impose a prefiling restriction in this case.

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re McDonald*, 489 U.S. 180, 184 n.8 (1989) (quoting *In re Martin–Trigona*, 737 F.2d 1254,

1261 (2d Cir. 1984)); *see also In re Darwin Gravitt*, No. 86-1617, 1987 WL 36293, at *1 (6th Cir. Feb. 10, 1987) (quoting same). "A court may exercise its inherent power to sanction when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' or when the conduct was 'tantamount to bad faith.'" *United States v. Aleo*, 681 F.3d 290, 305 (6th Cir. 2012) (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991))). To exercise their inherent authority, federal courts may "'impose carefully tailored restrictions' upon 'abusive litigants.'" *Scott v. Bradford*, No. 13-12781, 2014 WL 6675354, at *3 (E.D. Mich. Nov. 25, 2014) (quoting *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986)).

### A.

While *pro se* litigants' filings are "held to less stringent standards," their conduct is not. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Put in blunt terms, ordinary civil litigants proceeding *pro se* are not entitled to special treatment. *See McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 558 (6th Cir. 2003). They have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Instead, they must conduct themselves "with the decorum and respect inherent in the concept of courts and judicial proceedings." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). "A *pro se* litigant in essence stands in the place of an attorney." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 558 (1991) (Kennedy, J., dissenting). And while "courts must construe liberally the contents of a *pro se* complaint," *pro se* litigants are not exempt from the ordinary rules that

govern civil practice. *In re Edwards*, 748 F. App'x 695, 700 (6th Cir. 2019); *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

**B.**

In little more than a year, Qiu initiated nine Title VII suits against school districts across the Eastern and Western Districts of Kentucky.[4] While there is no limit to the number of actions that a plaintiff can bring to vindicate rights, there is a duty to litigate those claims in good faith and in accordance with the rules and procedures of the Court in which actions are filed. Qiu has repeatedly engaged in making ad hominem attacks against the opposing party and its counsel, consistently fails to adhere to the Local Rules, and needlessly burdens her adversaries by extending litigation past entry of final judgment through a series of meritless filings.

In another case brought before this Court, *Qiu v. Board of Education of Scott County, Kentucky*, Magistrate Judge Edward B. Atkins recommended that Qiu be permanently barred from filing documents in the case without certification from a magistrate judge that the proposed filing was not frivolous and was not filed with any improper purpose. *See* Order and Recommendation, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. Nov. 9, 2022),

---

[4] *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. filed July 7, 2021), *appeal docketed*, No. 23-5888 (6th Cir. Oct. 10, 2023); *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. filed July 15, 2021), *appeal docketed*, No. 23-5842 (6th Cir. Sept. 19, 2023); *Qiu v. Bd. of Educ. of Hardin Cnty.*, No. 21-cv-482 (W.D. Ky. filed July 26, 2021); *Qiu v. Bd. of Educ. of Bowling Green Indep. Schs.*, No. 22-cv-062 (W.D. Ky. filed May 27, 2022); *Qiu v. Bd. of Educ. of Oldham Cnty. Schs.*, No. 22-cv-284 (W.D. Ky. filed May 27, 2022); *Qiu v. Bd. of Educ. of Nelson Cnty. Schs.*, No. 22-cv-334 (W.D. Ky. filed June 27, 2022); *Qiu v. Bd. of Educ. of Oldham Cnty. Schs.*, No. 22-cv-383 (W.D. Ky. filed July 27, 2022); *Qiu v. Bd. of Educ. of Woodford Cnty. Pub. Schs.*, No. 22-cv-196 (E.D. Ky. filed July 29, 2022); *Qiu v. Bd. of Educ. of Jefferson Cnty. Pub. Schs.*, No. 22-cv-529 (W.D. Ky. filed Oct. 5, 2022).

ECF No. 82. The Recommendation highlighted Qiu's "reliance on ad hominem attacks directed at Defendant and its lawyers," and her consistent failure "to cite with particularity the legal foundation for her motions." *Id.* at 10–11. After providing Qiu with an opportunity to object, District Court Judge Gregory Van Tatenhove adopted the Recommendation and imposed a case-specific prefiling requirement. *See* Memorandum Opinion & Order, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. Jan. 23, 2023), ECF No. 97. But Qiu's misconduct persists and the undersigned will take a similar approach in *this* case to protect the judicial process and the good faith litigants appearing here.

1.

Qiu has been warned that, regardless of her status as a *pro se* litigant, she is "to show appropriate courtesy and respect to opposing counsel," that she "is not entitled to make unfounded ad hominem attacks on opposing counsel," and that "by acting unethically, frivolously, or vexatiously, 'the Court may impose sanctions as may be necessary and appropriate to deter such conduct.'" Order and Recommendation at 8–9, *Bd. of Educ. of Scott Cnty.*, No. 21-cv-197, ECF No. 82 (first quoting *Gueye v. U.C. Health*, No. 13-cv-673, 2014 WL 4984173, at *5 (S.D. Ohio Oct. 6, 2014); and then quoting *Wesley v. Accessible Home Care*, No. 18-cv-200, 2018 WL 6424691, at *3 (E.D. Ky. Dec. 6, 2018) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). Qiu's *pro se* status does not excuse her attempts to slander the Court by making unfounded accusations of bias or prejudice. *See Mayberry v. Pennsylvania*, 400 U.S. 455, 462 (1971); *Gueye*, 2014 WL 4984173, at *5.

Qiu repeatedly derides the opposing party and its counsel, referring to Assistant Superintendent Garett Wells as a "racist" [e.g., Record No. 29, pp. 11, 14, 18] and accusing

opposing counsel of perjury [*e.g.*, Record No. 34, p. 3], hiding evidence [e.g., Record No. 37, p. 6], and misleading the Court [e.g., Record No. 37, p. 6]. She also accuses the Court of falsifying facts [*e.g.*, Record No. 35, pp. 9, 11], misrepresenting the law [*e.g.*, Record No. 37, p. 7], and lawyering for the Board [*e.g.*, Record No. 35, p. 12].

These ad hominem attacks and baseless accusations are merely recycled from other cases she has brought in the Eastern and Western Districts of Kentucky. *See, e.g.*, Motion for Sanctions, *Qiu v. Bd. of Educ. of Oldham Cnty. Schs.*, No. 22-cv-383 (W.D. Ky. July 19, 2022), ECF No. 18 (accusing opposing counsel of misrepresenting the law); Motion for Sanctions, *Qiu v. Bd. of Educ. of Nelson Cnty. Schs.*, No. 22-cv-334 (W.D. Ky. July 19, 2023), ECF No. 22 (same); Motion to Strike—Exhibit A, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. Oct. 13, 2021), ECF No. 14-1 (notifying opposing counsel that she will move to "sanction, prosecute, disbar" to stop counsel from "criminally operating this case"); Motion for Sanctions, *Qiu v. Bd. of Educ. of Hardin Cnty.*, No. 21-cv-482 (W.D. Ky. Aug. 2, 2023), ECF No. 113 (accusing the defendant and opposing counsel of involving students in a perjury scheme); Motion to Recuse, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. Aug. 28, 2023), ECF No. 129 (accusing the presiding judge of having "served defendant and its lawyers as their lawyer" and doing so "with his power"); Motion to Recuse, *Qiu v. Anderson Cnty. High Sch.*, No. 21-cv-027 (E.D. Ky. Sept. 1, 2023), ECF No. 61 (making a similar accusation). Despite multiple warnings and admonishments, Qiu continues to conduct herself in a manner that is inappropriate and abusive to her adversaries and the Court.

**2.**

Qiu has also been warned that her motions must comply with Local Rule 7.1(a) and Federal Rule of Civil Procedure 7(b)(1)(B)–(C); that is, they must "state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it." *See, e.g.*, Order and Recommendation at 8, *Bd. of Educ. of Scott Cnty.*, No. 21-cv-197, ECF No. 82. "[T]he rule that *pro se* filings should be liberally construed does not exempt *pro se* litigants from basic pleading standards." *Johnson v. E. Tawas Hous. Comm'n*, No. 21-1304, 2021 WL 7709965, at *1 (6th Cir. Nov. 9, 2021). Nor does it require courts to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)). But even the most generous reading of Qiu's recent filings [Record Nos. 34, 35] fails to expose a legal or factual basis to support her motions. Instead, she merely repackages old arguments in a new motion with the hope of a better outcome—often while completely ignoring the factual and legal justifications for the Court's earlier rulings. These tactics fall far short of the Court's mandate that parties litigate their claims in good faith.

**3.**

Qiu's practice of extending litigation well past its natural conclusion with frivolous filings subjects her adversaries to needless expenditures of time and money. It also interferes with the Court's ability to manage its docket and places an undue burden on the tax-supported courts. *Cf. Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008). While her conduct is mirrored in the cases she has brought in the Western District of Kentucky, the Court will focus on the three cases brought in the Eastern District.

The first case Qiu brought before this Court was against the Board of Education of Anderson County. *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. filed July 7, 2021). After both parties' motions for summary judgment were fully briefed, Qiu moved for sanctions against opposing counsel. Motion for Sanctions, *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. Aug. 11, 2023), ECF No. 53. The Court found that she offered "no grounds to sanction" opposing counsel and denied her motion. Memorandum Opinion & Order at 10, *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. Aug. 11, 2023), ECF No. 59. Judgment was entered in favor of the defendant on August 28, 2023. Judgment, *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. Aug. 28, 2023), ECF No. 60. Qiu then filed a motion seeking the judge's recusal and a motion to alter the Court's judgment, pursuant to Rule 59(e). Both motions were denied as meritless. *See* Order at 2, *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. Sept. 12, 2023), ECF No. 63; Memorandum Opinion & Order at 1, *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. Sept. 19, 2023), ECF No. 64. Qiu has appealed to the United States Court of Appeals for the Sixth Circuit. Notice of Appeal, *Qiu v. Bd. of Educ. of Anderson Cnty.*, No. 21-cv-027 (E.D. Ky. Oct. 10, 2023), ECF No. 65, *appeal docketed*, No. 23-5888 (6th Cir. Oct. 10, 2023).

The second case Qiu brought before this Court was against the Board of Education of Scott County. *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. filed July 15, 2021). Opposing counsel moved for a status conference on February 7, 2022, stating that "[i]n the past five months, Qiu has filed thirteen (13) separate pleadings which have required [Scott County Schools] to expend time, money, and resources to respond." Motion for Status Conference at 2, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. Feb. 7, 2022),

ECF No. 29. The Court imposed a case-specific prefiling injunction against Qiu after finding that she had a "history of filing frivolous motions." Memorandum Opinion & Order at 4, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. Jan. 23, 2023), ECF No. 97. Judgment was entered in favor of the defendant on May 26, 2023. Judgment, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. May 26, 2023), ECF No. 112. Since the Court entered Judgment nearly six months ago, Qiu has moved for sanctions against opposing counsel, moved to alter the Court's Judgment, filed a motion to have the presiding judge recuse, and has entered a number of miscellaneous objections. All of these requests have been denied. Qiu has appealed this case to the Sixth Circuit as well. Notice of Appeal, *Qiu v. Bd. of Educ. of Scott Cnty.*, No. 21-cv-197 (E.D. Ky. Sept. 18, 2023), *appeal docketed*, No. 23-5842 (6th Cir. Sept. 19, 2023).

Qiu filed the instant case on July 29, 2022. [Record No. 1] The parties had fully briefed their respective motions for summary judgment by early September 2023. The undersigned entered Judgment in favor of the Board on September 27, 2023. [Record No. 33] Shortly thereafter, and consistent with her well-established pattern, Qiu moved for sanctions against opposing counsel and sought to have the Court alter its Memorandum Opinion and Order granting summary judgment to the Board. [Record Nos. 34, 35] As discussed above, these motions are frivolous and have placed an unnecessary burden of time and expense on the Board and opposing counsel.

C.

"Filing restrictions are 'the proper method for handling the complaints of prolific litigators,' and a district court may impose one at its discretion." *United States v. Petlechkov*,

72 F.4th 699, 710 (6th Cir. 2023) (quoting *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)). Although a plaintiff may not be "absolutely foreclosed from initiating an action in a court of the United States," district courts may "require one who has abused the legal process to make a showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed." *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996); *see also Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."). If a litigant "is likely to continue to abuse the judicial process and harass other parties," then a pre-filing injunction is warranted. *Scott*, 2014 WL 6675354, at *4 (quotations omitted). When doing so, the court must articulate sufficient rationale, particularly when the defendant is proceeding *pro se*. *Petlechkov*, 72 F.4th at 710. Courts should also ensure that filing restrictions are narrowly tailored to address the abusive filing practices. *See United States v. Westine*, No. 22-5790, 2023 WL 7511686, at *2 (6th Cir. Nov. 9, 2023).

Here, the undersigned finds that Qiu has a history of abusing the judicial process by filing frivolous motions that harass other parties, needlessly extend litigation, and interfere with the Court's ability to administer justice in an expedient and orderly fashion. This Court has afforded her significant latitude due to her status as a *pro se* litigant. But despite the Court's repeated warnings, opportunities to be heard, and guiding instruction, she continues to disregard these admonitions at the expense of other litigants. Her conduct is tantamount to bad faith. *See BDT Products, Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010). It "is not appropriate and should not be tolerated." *Wesley,* 2018 WL 6424691, at *3.

Pursuant to this Court's inherent power and consistent with the Sixth Circuit's holding in *Ortman*, the undersigned will impose a prefiling restriction requiring Qiu to show a legal basis for new motions before she can file them in this case. *See Chambers,* 501 U.S. at 46. This requirement is not meant to discourage Qiu from filing future motions where she can demonstrate a good faith legal basis. The undersigned finds this requirement the least restrictive means of promoting the interest of judicial economy and protecting other parties before the Court. At this time, the undersigned does not believe that a District-wide injunction or monetary penalties are necessary. However, the Court does not foreclose these options should Qiu's misconduct persist.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Qiu's motion for sanctions against opposing counsel [Record No. 34] is **DENIED**.

2. Plaintiff Qiu's motion to alter the Judgment in this case [Record No. 35] is **DENIED**.

3. Within twenty-one days, Plaintiff Qiu is directed to **SHOW CAUSE** why the Court should not impose the filing restriction described above. She is directed to file a written response articulating the factually and legally sufficient grounds for any opposition.

4. With the exception of responding to paragraph 3 of this Order, Plaintiff Qiu is temporarily **ENJOINED** from filing any documents or motions in this case for the lesser of twenty-one (21) days or entry of the Court's order regarding a prefiling restriction.

Dated: November 21, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky